(36 South. 200.)

No. 15,155.

STATE ex rel. REES et al. v. FOSTER, Judge.

(March 14, 1904.)

COURTS—JURISDICTION—PRIMARY ELECTIONS.

1. The courts of this state are without jurisdiction to entertain an action contesting the validity or result of a primary election, in the absence of express statutory authorization.

2. The question belongs to the political department of the government. See Const. 1898, arts. 16, 17; State v. Judge, 13 La. Ann. 89; State v. Police Jury, 6 South. 777, 41 La. Ann. 846.

(Syllabus by the Court.)

Application by the state, on the relation of Rees, Broussard and others, for writ of mandamus to T. Don Foster, Judge Nineteenth Judicial District Court for the parish of St. Martin. Application dismissed.

A. J. Cammack, for relators. Respondent judge, pro se.

LAND, J. This is an application for a writ of mandamus to compel the respondent judge to grant an injunction restraining the Secretary of State from placing upon the regular Democratic ticket to be voted at the general state election in April, 1904, the names of certain candidates for the offices of sheriff, clerk, etc., claiming to have been selected and nominated at a primary election held on the 21st of September, 1903.

Relators represent that on the 22d of February, 1904, they presented a petition for injunction, which was refused by the district judge, for reasons assigned in writing; that thereupon relators prepared and presented a second petition setting forth additional allegations and facts, which the district judge refused to entertain or consider, on the grounds that relators had no right to withdraw the first petition and substitute in its place another petition with additional allegations.

Relators represent that, unless an injunction issue as prayed for, an irreparable injury will result to them, as the cause could not be tried and judgment rendered before the April election, and that the district judge erred in refusing the injunction as prayed for in said petitions.

Relators further represent that they have used every method known to them to protect their rights, and that the only relief that remains is to invoke the supervisory jurisdiction of this court, and pray for the issuance of a preliminary writ of mandamus directing the respondent judge to show cause "why a peremptory writ of mandamus should not be issued ordering and commanding him to grant an injunction as prayed for, and as requested in the last petition submitted to him in this cause on the 8th day of February, 1904."

The two petitions and reasons of the district judge referred to, and other exhibits, are annexed to the application.

This court ordered that the district judge show cause why the writ of mandamus should not issue as prayed for.

In his answer, the respondent judge shows that he refused to grant the injunction prayed for, on the grounds stated in his written reasons, which are made part of his answer; that he declined to take notice of the so-called amended petition, presented after the injunction had been refused, for the reasons assigned; that the court is without jurisdiction under Act No. 152, p. 266, of 1898; and that the relators should have applied for relief to the board of contests.

It is to be noted that relators do not pray that the district judge ·be ordered to act on the second petition, but that he be ordered and commanded to grant an injunction as prayed for in said petition. The refusal of the district judge to entertain or consider the second petition was tantamount to a refusal to grant the relief prayed for.

It is unnecessary to consider the first petition, which was withdrawn and abandoned.

The second petition presents substantially the following statement of·facts:

The plaintiffs, respectively, were the candidates of one faction of the Democratic Party, in the parish of St. Martin, for nomination for the offices of sheriff, coroner, clerk, representative, justice of the peace, constable, and police juror, at the primary election ordered to be held on the 1st day of September, 1903; and the defendants, respectively, were the candidates of the opposing faction for the same offices at said election.

On the day fixed, the polls were opened, and the election proceeded with. The rules provided that no party should be entitled to vote unless he had paid his poll tax for the years 1901 and 1902, but did not prescribe that the voter should exhibit his poll-tax receipts, or certified copies thereof.

The registrar of voters for said parish did not make any certified list of the registered voters ,of each precinct to be used at said election as the law requires, although requested and demanded by plaintiffs to do so.

Plaintiffs were not made aware that the voters would be required to show their poll-tax receipts, or certified copies thereof, until after the opening of the polls on the day of election, the rules not so requiring, and it being customary at such elections for all parties to vote who were shown to be qualified voters·as certified to upon the list furnished by the registrar.

The voters of the plaintiffs' faction were required to show duplicate poll-tax receipts before being permitted to vote. The opposing faction had duplicate poll-tax receipts printed and filled in, and some one to issue the same to each voter who expressed a wish or desire to vote their ticket, and none were 'issued or permitted to be issued to any one who wished to vote for the plaintiffs.

The sheriff of the parish, on said election day, closed his office for the entire day, and

thereby prevented any one from getting a duplicate poll-tax receipt. No duplicate poll-tax receipts were issued to any persons, except to supporters of the opposing faction, in any portion of said parish.

At one precinct "there were stationed eight to ten deputy sheriffs, with arms, for the purpose of intimidating and preventing persons from voting for the Rees-Broussard faction, plaintiffs herein."

At another precinct, during this election, pistols were drawn on several occasions, and the voters intimidated and prevented from voting for plaintiffs.

About 9:30 o'clock a. m. plaintiffs protested against the illegal manner in which the primary election was being conducted, and withdrew from the polls.

Duplicate poll-tax receipts, without date of payment, were issued and handed to parties voting for defendants herein, and some were issued to parties who had not paid their poll tax.

Plaintiffs protested in writing before the parish Democratic executive committee, and appealed to the state executive committee, which referred the matter to the state central committee, which referred the protest back to the state executive committee, which then took up the matter and decided that it had no jurisdiction, and relegated the case to the courts for adjustment.

The prayer was for judgment declaring said primary election to be null and void and of no force and effect, and that no Democratic candidates for the offices named were nominated at said election; and "ordering that candidates be regularly and legally elected or chosen as the law provides for said offices"; and enjoining the Secretary of State from printing, or causing to be printed, upon the regular Democratic ticket for the state election in April, 1904, "the names of the parties supposed to be elected in the parish of St. Martin at the Democratic primary supposed to be held on the 21st day of September, 1903."

The case is before us, not on its merits, but on the sole question of the correctness of the ruling of the district judge in refusing the injunction directed against the Secretary of State. We have stated in substance the allegations of the petition in order to show the nature of the action instituted in the lower

court. Plaintiffs have appealed to the judiciary to annul a primary election, to order another election, and to enjoin the Secretary of State from discharging political duties imposed on him by the statutes of the state.

We might well content ourselves with holding that the district judge of the parish of St. Martin has no jurisdiction of an action instituted in said parish against the Secretary of State, whose official domicile is in the parish of East Baton Rouge. Code Prac. art. 129; Gibson v. Huie, 14 La. 129.

But we prefer to rest our decision on another ground, and that is the want of jurisdiction of the district court over the subject-matter of the controversy.

The courts cannot exercise powers which are not judicial, except in instances expressly directed or permitted. Const. 1898, arts. 16, 17.

"The contesting of votes is not a judicial function, only so far as made such by special statutes." In the absence of a statutory authorization, judicial tribunals are without jurisdiction ratione materiæ. State v. Judge, 13 La. Ann. 89.

This doctrine was approved in State ex rel. Woodruff et al. v. Police Jury et al., 41 La. Ann. 846, 6 South. 777. That case involved a controversy over an election to determine the location of a parish seat.

The court said: "The Legislature was charged with the function of ordering this election, and regulating the mode in which the votes should be cast and returned, and the result ascertained and proclaimed. It has exercised this function, and it has not seen fit to authorize any appeal to the courts."

The court further said: "We by no means disclaim control over officers, charged with specific duties of a ministerial character in connection with elections, to compel them to discharge such duties. This jurisdiction we have claimed and exercised. State ex rel. v. Patton, Judge, 40 La. Ann. 393 [4 South. 50, 8 Am. St. Rep. 532]; State ex rel. Mayor v. Judge, 35 La. Ann. 639." The primary law of this state vests no jurisdiction whatever in the courts, but leaves it to the party representatives to adopt rules and regulations on the subject, not inconsistent with the provisions of the statute.

The general election law creates a board of

contests to pass on party nominations, and makes their decision final. In the absence of statutes, the question of a party nomination must be decided by the party concerned. We assume that, by party usage, jurisdiction was vested in the Democratic executive committee of the parish to determine the validity of the primary election complained of, and, while not directly alleged, it results, from the allegations of plaintiffs' petition, that said committee decided adversely to their contentions.

The district court and this court are without jurisdiction in the premises.

It is therefore ordered, adjudged, and decreed that this application be dismissed, at the cost of relators.